UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

STEPHEN ROBERTS NUNN,                    )
                                          )
            Petitioner,                   )
                                          )
                                          )        No. 5:17-CV-356-WOB-REW
v.                                        )
                                          )        RECOMMENDED DISPOSITION
AARON SMITH, Warden,                      )
                                          )
            Respondent.                   )

* * * * * * * * * *

On August 23, 2017,[1] Petitioner, Stephen Nunn, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. DE 1 (Petition). The Court conducted an initial review of the filing and perceived the petition as probably untimely. DE 8 (Order). The Court thus directed briefing on timeliness and equitable tolling (if applicable). *Id.* Each side responded. DE 18 (Nunn Response); 25 (Warden Response, seeking timeliness-based dismissal). The Court also granted Nunn permission to supplement his response on the timeliness issue, and to reply. DE 23 (Motion to Supplement); DE 27 (Order); DE 28 (Motion for Reply); DE 29 (Order granting reply). Having reviewed the entire record under the applicable standards, the Court **RECOMMENDS** that the District Court **DISMISS** the time-barred petition (DE 1) **WITH PREJUDICE** and **DENY** a certificate of appealability. The AEDPA statute of limitations bars the petition, and no tolling basis spares the filing.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002) (per curiam). Here, Nunn placed the motion in the prison mailing system on August 23, 2017. DE 1, at 16.

1

# I.    BACKGROUND

## A.    Factual & Procedural History

The Kentucky Court of Appeals articulated the underlying facts and history through the trial court's January 26, 2015, denial of Nunn's state post-conviction motion:

> On September 11, 2009, Nunn murdered Amanda Ross near her residence in Lexington, Kentucky. On November 10, 2009, Nunn was indicted by a Fayette County Grand Jury for the murder . . . A civil suit was filed by Ross's Estate against Nunn for her wrongful death on September 28, 2009.
>
> On November 17, 2009, attorney Warren Scoville entered his appearance for Nunn in the criminal proceeding. . . . In order to pay Scoville's fee of $200,000 for representation in the criminal proceeding, Nunn transferred his house in Glasgow, Kentucky, to Scoville. [T]he sale netted proceeds of approximately $137,000 . . . [which] were used to pay Scoville's fee . . . In December 2009, the plaintiffs in the civil case against Nunn joined the Scoville Law Firm as a co-defendant . . . When the[y] became satisfied that the transfer was not fraudulent, they agreed to dismiss the Scoville Law Firm . . . without prejudice in February 2010.
>
> . . . Nunn pleaded guilty to life imprisonment without parole on June 28, 2011, which the trial court accepted.
>
> On October 27, 2011, Scoville sent a letter to Nunn stating, in part, the following: "I spoke with Burl McCoy [the attorney representing the plaintiffs in the civil suit against Nunn] last week and he indicated to me that the civil cases would be dismissed. He indicated that he would speak with Mrs. Ross as soon as he could get up with her to discuss the matter. All I can do is trust Burl to do what he said he would do."
>
> . . . .
>
> On April 9, 2012, Scoville sent Nunn a letter stating, in part: "I was shocked Thursday when I received the Motions from Ms. Ross'[s] attorney for a Summary Judgment . . . in the civil case. . . . I had [a] verbal agreement with Burl McCoy that the civil case would 'go away' after you entered your plea. . . ."
>
> On August 20, 2013, a summary judgment was entered against Nunn in the civil case, awarding damages against him in the amount of $24,253,298.85. On October 22, 2013, Nunn filed a pro se motion to vacate his judgment and sentence in this proceeding pursuant to RCr 11.42, wherein he argued that his attorney had misadvised him concerning the direct and collateral consequences of his conviction, failed to demand a competency hearing and failed to investigate his defense of extreme emotional distress. . . . The Department of Public Advocacy (DPA) filed a motion to supplement Nunn's *pro se* RCr 11.42 motion, and

included the claim that Scoville's representation of Nunn in the criminal case constituted a conflict of interest[.] . . .

An extensive evidentiary hearing was held on Nunn's RCr 11.42 motion on October 30, 2014[.] . . . Scoville testified that Nunn told him that he did not want to put his daughters through a trial and that McCoy had indicated that Diana Ross, the representative for the estate of Amanda Ross, was willing to drop the civil suit against Nunn if he agreed to plead guilty. Scoville also testified that Nunn understood that the dismissal of the civil suit was not a condition for Nunn's guilty plea in the criminal proceeding.

McCoy testified that he . . . never told Scoville that there was an agreement to dismiss the civil suit if Nunn pled guilty.

. . . .

Nunn testified that he pleaded guilty in order to spare his daughters and the Ross family the anguish of a trial, and that he had hoped the civil suit and the criminal case would be resolved together. He also testified that he would not have pled guilty if he had known that the civil suit was not going to be dismissed.

*Nunn v. Commonwealth*, No. 2015-CA-000225-MR, 2016 WL 3751993, at *1–3 (Ky. Ct. App. July 8, 2016), *review denied* (Feb. 9, 2017), *cert. denied sub nom. Nunn v. Kentucky*, 137 S. Ct. 2312, 198 L. Ed. 2d 740 (2017) (internal citations omitted). Nunn also specifically "testified that he learned that the civil action wasn't dismissed when he received a copy of a Motion for Partial Summary Judgment filed by Burl McCoy on behalf of Amanda Ross'[s] Estate sometime in April of 2012." *Id.* at *5 (internal citations omitted).

## B.      AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) subjects section § 2254 petitions to a one-year limitation period. 28 U.S.C. § 2244(d). Specifically, the statute provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

3

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.*

### C.    Key Procedural Events

Kentucky entered a criminal judgment against Nunn on June 28, 2011. DE 1, at 1; *see also* DE 1-2, at 63 (7/28/2011 state court judgment). Per his petition, Nunn did not appeal.[2] The judgment thus became final upon passage of the 30-day window to take such an appeal—here, on July 28, 2011. *See* RCr 12.04.

---

[2] As the Court previously noted, DE 8 at 2 n.2, review of the Kentucky Supreme Court and Kentucky Court of Appeals dockets reveals no direct appeal and no Nunn activity until a May 1, 2013, CR 76.36(4) petition for a writ of prohibition. *See Nunn v. Goodwine*, Case No. 2013-CA-000804 (Ky. Ct. App. May 1, 2013). The Kentucky Court of Appeals struck Nunn's motion shortly thereafter. *Id.* (July 16, 2013). Nunn now claims, referencing other filings, the above information is incomplete. DE 18, at 10. Nunn's argument primarily concerns equitable tolling, which the Court addresses (as applicable) below. *Id.* at 1–2. The Court's prior order did not substantively address tolling, and Nunn does not dispute his failure to appeal.

Eight-hundred and seventeen (817) days (over two years) passed before Nunn filed a RCr 11.42 post-conviction relief motion, on October 22, 2013.[3] The trial court denied the motion on January 26, 2015, and Nunn appealed. *See* DE 1, at 4; *Nunn v. Commonwealth*, No. 09-CR-01678 (Fayette Cir. Ct. Jan. 26, 2015) (hereinafter *Goodwine Opinion*).[4] The Kentucky Court of Appeals affirmed 11.42 denial on July 8, 2016. *Nunn*, 2016 WL 3751993, at *6. The Kentucky Supreme Court denied discretionary review on February 9, 2017, and the United States Supreme Court denied Nunn's petition for certiorari on June 26, 2017.[5] *See id.* at *1. Nunn filed the current § 2254 petition on August 23, 2017, over one-hundred and eighty (180) days after 11.42 proceedings ended.

---

[3] Relying on Nunn's sworn Petition (DE 1, at 3), the Court previously calculated this range using an October 17, 2013, filing date. DE 8, at 2. Nunn's response renews his October 17 filing claim. DE 18, at 5. Yet, Nunn attaches state court documents that suggest an October 22, 2013, filing date. *See* DE 1-3, at 22 (Order setting evidentiary hearing for Nunn's 11.42 motion "entered herein on October 22, 2013"); *see also Nunn*, 2016 WL 3751993, at *2 ("On October 22, 2013, Nunn filed a pro se motion to vacate his judgment and sentence in this proceeding pursuant to RCr 11.42[.]"). The Court will use the filing date identified by the state courts. However, the Court also notes that—as explained below—the five-day disparity does not impact timeliness.

[4] Patently, Judge Goodwine's ruling on the 11.42 is highly relevant to resolution of Defendant's claim. Nunn's appendix purports to include the vacatur denial in the record, DE 1-1, at 10, but the attachments only include a DPA notice of the ruling. DE 1-3, at 93. To clarify the history and ensure a complete record, the Court, in its discretion, will direct the clerk to file the opinion & order, secured from the Fayette Circuit Clerk, contemporaneously with this Recommended Disposition. *See* Rule 7, Rules Governing 2254 Proceedings (Rule 7).

[5] Again, the Court relied on Nunn's **sworn** petition (DE 1, at 6) in previously identifying June 6, 2017, for certiorari denial. DE 8, at 3 n.3. The Court will grant Defendant's request (DE 18, at 6) to take judicial notice of the actual June 26, 2017, denial date. *See Nunn*, 137 S. Ct. 2312 (mem). The twenty-day variance is inconsequential. The Court only noted certiorari denial because it, incidentally, ended Nunn's official record activity. Under § 2244(d)(2), the 11.42 motion's pendency only tolled Nunn's AEDPA clock until the Kentucky Supreme Court's discretionary review denial on February 9, 2017. *See Lawrence v. Florida*, 127 S. Ct. 1079, 1083 (2007) ("The application for state postconviction review is [ ] not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1–year limitations period during the pendency of a petition for certiorari.").

### D.    Court's Initial Review and Timeliness Baseline

The Court found the petition facially untimely on initial review pursuant to Rule 4 of the Rules Governing Section 2254 Cases. DE 8. Nunn's judgment became final on July 28, 2011. Consequently, under § 2244(d)(1)(A) the one-year statute of limitations expired on July 28, 2012, years before the August 23, 2017, § 2254 filing. However, the Court noted that Nunn's AEDPA clock—if not already expired—facially qualified for statutory tolling between his October 22, 2013, 11.42 filing and state discretionary review denial on February 9, 2017. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). The same cannot be said for the 195 days that passed between February 9 and Nunn's August 23, 2017, § 2254 filing date. *See Lawrence*, 127 S. Ct. at 1083 ("2244(d)(2) does not toll the 1–year limitations period during the pendency of a petition for certiorari."). Thus, just under § 2244(d)(1)(A) & (d)(2), one thousand and twelve (1,012) days elapsed between judgment finality and Nunn's § 2254 filing. The Court examines Nunn's response from this baseline, which definitively shows a (d)(1)(A) time bar.

Nunn's numerous avoidance arguments fall into four categories, three statutory and one equitable. Under § 2244, Petitioner contends: (A) Kentucky impeded his timely filing (DE 18, at 2); (B) his claim was not discoverable through due diligence on the date the judgment became final (*Id.* at 7); and (C) the related wrongful death suit pendency justifies additional § 2244(d)(2) tolling (*Id.* at 11-12). Finally, in arguments 4–9 (*Id.* at

12–28) and the various labeled "Adjunct Argument[s]" (*Id.* at 28–49), Nunn pursues equitable tolling.

The Court has carefully reviewed the entire record, watched the filed videos, and assessed all tendered exhibits. Without question, Nunn's § 2254 is tardy and subject to dismissal. He clearly knew or had ready access to facts regarding each and every claim he tries now to pose well within the standard limitation period. No statutory or equitable theory preserves petition timeliness. Nunn murdered Ms. Ross. He admitted guilt and accepted punishment. The District Court should reject Nunn's untimely effort to displace the conviction imposed by the Commonwealth.

## II.    ANALYSIS

### 1.    Delayed Accrual - § 2244(d)(1)

#### A.    *State-Created Filing Impediment - § 2244(d)(1)(B)*

If an "impediment to filing an application [is] created by State action in violation of . . . [federal] laws" and the alleged state-created obstacle prevents filing, the AEDPA clock does not run until the state hindrance is removed. 28 U.S.C. § 2244(d)(1)(B). Nunn alleges state violations of his Fifth, Sixth, and Fourteenth Amendment rights arising out of the following events: (i) on November 9, 2012, Nunn petitioned the Fayette Circuit Court for assistance in obtaining his case file from prior counsel Scoville—the request was granted on May 31, 2013; (ii) in December 2012, and continuing until case file access in May 2013, the Commonwealth's Attorney's Office opposed (in part) his request; (iii) on July 3, 2017, the Kentucky Department of Public Advocacy (DPA) allegedly lost numerous pages of Nunn's case file; and (iv) on September 7, 2017, Kentucky Department of Corrections (DOC) employees temporarily confiscated Nunn's

case file. DE 18, at 4–5. Nunn claims each event impeded his filing and thus, under §
2244(d)(1)(B), that his 1-year AEDPA clock should not have activated until those
obstacles resolved.

The Court readily (and practically) dispenses with the latter two events as possible
§ 2244(d)(1)(B) accrual predicates. Patently, Nunn's August 23 § 2254 petition filing
belies (a) the notion that lost documents[6] prevented filing and/or (b) the idea that post-
filing confiscation affected the filing itself. *See* 28 U.S.C. § 2244(d)(1)(B) (delaying
AEDPA clock accrual based on state impediments if the "applicant was prevented from
filing"); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750–51 (6th Cir.
2011) ("[A]ccess to the trial transcript—although understandably helpful to petitioners—
is not necessary to file a habeas petition, as was demonstrated in the present case by the
fact that Hall ultimately filed his petition without ever having received the transcript.").
Nunn was able to file his petition without the lost case-file portions, and he had already
filed by the time the DOC took any materials. These allegations do not fit within §
2244(d)(1)(B).

The Court also perceives several fatal deficiencies in Nunn's claims regarding the
case-file request. He does not persuasively argue any federal invalidity to the state file
litigation. First, Nunn alleges violations of the Fifth and Sixth Amendments. These are
inapplicable in the circumstances. The Fourteenth Amendment, not the Fifth, delineates
states' due process responsibilities. *See* U.S. Const. amend. XIV ("[N]or shall any **State**
deprive any person of life, liberty, or property, without due process of law[.]") (emphasis

---

[6] *See also Johnson v. Florida Dep't Of Corr.*, 513 F.3d 1328, 1331 (11th Cir. 2008)
("'[I]ncompetent' performance by appointed counsel 'is not the type of State impediment
envisioned in § 2244(d)(1)(B).'").

added). Likewise, Nunn complains of state action "in the postconviction context where prisoners have no constitutional right to counsel." *Lawrence*, 127 S. Ct. at 1085 (internal citation omitted). Only Nunn's Fourteenth Amendment Due Process claim constitutes a possible trigger for § 2244(d)(1)(B), in this context.

Second, Nunn offers no plausible nexus between the constitutional violations he alleges and the identified state proceedings. The Court perceives Nunn's statements regarding the work product doctrine as an attempt to craft the requisite connection. Yet, Nunn alleges no actual work product doctrine violation. The doctrine does not bar courts from conducting a hearing before turning over case files, nor does it forbid prosecutorial objection to file surrender. Kentucky validly sought to police the prior protective order and to assure Nunn received information properly subject to access. Petitioner cites no case to cast this as in violation of federal law. Even if the Court assumes Nunn had a Fourteenth Amendment-cognizable property right in his case file, he fails to explain how the process he received was insufficient, *i.e.*, Nunn advances no procedural due process claim. Neither the state court, nor the state prosecutors violated the "fundamental requirement of due process[, which mandates] an opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 96 S. Ct. 893, 902 (1976). Nunn does not allege otherwise. Similarly, Nunn claims no substantive due process violation, *i.e.*, he does not claim that unfettered case file access must remain inviolate from "government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 106 S. Ct. 662, 665 (1986); *see also Rudd v. Johnson*, 256 F.3d 317, 319–20 (5th Cir. 2001) (rejecting claim of denial of due process based on lack of access to state's case file during state habeas proceeding).

9

Third, and most importantly, Nunn fails to explain how case-file inaccessibility **prevented** his filing. *See* 28 U.S.C. § 2244(d)(1)(B); *cf. Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986) (holding unavailability of trial transcript was not a *per se* due process violation and requiring showing of prejudice). "In fact, [Nunn] has never identified to this Court a single document to which he [or his postconviction counsel] did not ultimately gain access, much less how its lack prevented him from filing . . . his § 2254 petition[ ]." *Johnson v. Florida Dep't Of Corr.*, 513 F.3d 1328, 1332 (11th Cir. 2008); *cf. Satterfield v. Johnson*, 434 F.3d 185, 196 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 198 (2006) (holding deprivation of legal documents does not justify equitable tolling "[w]here a petitioner is ultimately able to file his habeas petition, with or without having received replacement materials").

Nunn, the Court must note, makes three basic claims: (1) that Scoville, relative to the guilty plea, failed him with respect to dismissal of the civil cases; (2) that Scoville failed him by not pursuing competency or pushing an EED defense; and (3) that Scoville had a conflict by virtue of the criminal fee payment and the brief inclusion of Scoville in the civil case, as to a possible fraudulent transfer. Nunn does not show how file access impeded his knowledge of or ability to express the claims. He was well aware that the civil case rolled on by April 2012, and that the Ross Estate would be seeking a judgment against him. DE 1-2, at 77 (Scoville letter to Nunn explaining "they intend to proceed vigorously against you in the civil case."). Nunn had lived the litigation, had participated in competency proceedings, and had complete knowledge of the EED defense and its potential applicability at trial. Finally, Nunn was *pro se* in the civil cases after May of 2012 (although he had interactions with a guardian ad litem). As a *pro se* litigant, Nunn

plainly had the right to (and duty to) attend to the case. He could have seen, been aware of, and explored the inclusion of Scoville as a prior defendant at any point during the remaining civil litigation. The resolution of Scoville's status was public record.

Finally, the Court notes Nunn's allegation "that Petitioner's counsel Warren Scoville created an impediment to filing by denying Petitioner access to his legal case filed for 14 months, which began March 26, 2012." DE 18, at 6. If true, Scoville's conduct, not Commonwealth action, was the relevant impediment to Nunn's document review. Scoville was a privately retained attorney, not a state actor. Thus, even if Nunn's separation from his case file *prevented* § 2254 filing—in some unexplained fashion—§ 2244(d)(1)(B) would be inapplicable. *See* 28 U.S.C. § 2244(d)(1)(B) (requiring an "impediment to filing an application created by **State action**") (emphasis added); *Polk Cty. v. Dodson*, 102 S. Ct. 445, 450 (1981) ("In our system a defense lawyer characteristically opposes the designated representatives of the State.").

The Court also finds that Scoville communicated multiple times that Nunn could pick up his file. Thus, in letters from April and May of 2012, Scoville stated that he had the file assembled, agreed that it belonged to Nunn, and offered to release it immediately to Nunn (via his daughter). DE 1-2 at 75–76, 85. Even at the time Nunn decided to approach the Fayette Circuit Court for relief, Scoville told him in a letter: "Have Mary call and bring a copy of a Power of Attorney and we will be glad to release everything we have." *Id.* at 97. Scoville was no impediment, and Nunn could have retrieved his materials at any point from April to November of 2012.

In addition to stating no constitutional access claim, Nunn fails to establish any factual predicate for § 2244(d)(1)(B) tolling.

B.      *Undiscoverable Claim - § 2244(d)(1)(D)*

Nunn also pursues an argument under 28 U.S.C. § 2244(d)(1)(D), which measures AEDPA limitation accrual from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Per Nunn, the pertinent claim[7] was ineffective assistance arising from Scoville's assurances regarding civil suit dismissal. Nunn asserts that the factual predicate for his claim regarding Scoville's promise—that a guilty plea would result in civil suit dismissal—was undiscoverable until the Fayette Circuit Court entered final civil judgment on August 20, 2013. DE 18, at 7. He contends that judgment entry made his "claim of a Breach of Contract . . . justiciable . . . [; a]t that point it became a factual predicate and not simply speculative[.]" *Id.* The Court perceives several crippling deficiencies in Nunn's argument under § 2244(d)(1)(D).

Nunn suggests he did not know enough to assert the claim until Judge Ishmael entered a final judgment in the civil case. He reaches this by phrasing the argument in language of contract (or perhaps, legal malpractice). However, Nunn's *Strickland* claim is that Scoville misled him into thinking the civil cases would end—the Estate would agree to dismissal—if he pleaded guilty to the LWOP murder. It was evident and known to

---

[7] Nunn does not make a predicate-discovery argument on his second and third claims. Judge Goodwine found that a competency examination in fact had occurred, *see* DE 1-3, at 23, and Nunn obviously considered, from the 11.42 hearing, an EED theory a key alternative in his defense. Thus, he timely had access to facts relating to such claims. Although Nunn suggests he knew nothing of the possible civil conflict, the Court finds that Nunn had access to the full public record (which included the full chronology) and was *pro se* from May 2012 forward. A reasonably diligent litigant would have reviewed the docket and been aware of Scoville's brief appearance as a defendant. Of course, the Kentucky Court of Appeals rejected any conflict, *see Nunn*, 2016 WL 3751993, at *6, but the point here is that Nunn knew or should have known of the foundation for such a theory well more than a year before he filed the 11.42.

Nunn, well before entry of the $24+ million judgment, that the Estate certainly was not dismissing and that the civil cases would forge ahead. Nunn misunderstands what constitutes a claim's "factual predicate" for § 2244(d)(1)(D) purposes. "[N]ew information discovered that merely supports or strengthens a claim that could have been properly stated without the discovery is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012)). As the Second Circuit has opined:

> Congress did not provide a definition of the term "factual predicate," as used in § 2244(d)(1)(D); . . . Those courts that have given meaning to the term agree that a factual predicate consists only of the "vital facts" underlying the claim. . . . We agree. The facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (requiring a district judge to dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief") or Rule 12(b)(6) of the Federal Rules of Civil Procedure[.]

*Rivas*, 687 F.3d at 535 (internal citations omitted). Here, Nunn's knowledge of final civil judgment entry was not a prerequisite for his claim that Scoville misled him during plea negotiations by claiming his civil case "would be *dismissed* as part of the plea deal he had struck with opposing counsel." DE 1, at 6 (emphasis added). Nunn alludes to this claim's latest undiscoverable potential factual predicate in the same paragraph, *i.e.*, when he "was made aware of the fact that no deal was struck." *Id.* It did not take a final judgment for Nunn to know there was no deal.

Notwithstanding Nunn's subsequent sworn claim that Scoville's alleged dissembling went undiscovered until judgment entry, DE 1, at 6, the record clearly establishes his factual-predicate awareness more than a year earlier. Nunn's own exhibits

include an April 26, 2012, letter he received from Scoville that indisputably alerted Nunn to persistence of the civil cases: "they intend to proceed vigorously against you in the civil case." DE 1-2, at 77 (relevant portion underlined in original). The Kentucky Court of Appeals restated Judge Goodwine's particular finding "that [Nunn] learned that the civil action wasn't dismissed when he received a copy of a Motion for Partial Summary Judgment filed by Burl McCoy on behalf of Amanda Ross'[s] Estate sometime in April of 2012." *Nunn*, 2016 WL 3751993, at *5. Thus, well more than a year before the August 20, 2013, civil judgment entry, Nunn was aware of all necessary factual predicates for his ineffective assistance claim—he knew the actions persisted and the Ross Estate would not dismiss.

The Court observes a few other important data points. In correspondence with his guardian ad litem, in July of 2012, Nunn described the civil status in the following way: "Scoville either lied or mislead [sic] me as to the civil suit being dropped, as per my plea. Obviously that hasn't happened. This & other issues may lead me to a 11.42[.]" DE 1-2, at 88. This starkly shows Nunn's cognizance of the claim predicate and the vehicle for possible relief. Also, Nunn testified to Judge Goodwine that he was *pro se* from Scoville's May 2012 withdrawal on. The final judgment shows that Judge Ishmael had actually entered a liability judgment on October 9, 2012. *See* DE 1-2, at 178. Thus, more than one year prior to the 11.42, Nunn knew a liability judgment existed. Nothing indicates that Nunn took any effort to litigate any possible agreement to dismiss. *See also Goodwine Opinion*, No. 09-CR-01678, at 8 ("[T]he Court could not find any mention or reference in the civil action proceedings that it was Nunn's belief that the civil action was

going to be dismissed once he entered his guilty plea."). Obviously, the absence of any deal was plain to Nunn and anyone else paying reasonable attention.[8]

Granting Nunn the maximum possible benefit of the doubt, the Court will assume that he could not have discovered the civil suit was not to be dismissed—and assume that fact was indeed a predicate for his claim—until "sometime in April, [2012,]" as Nunn previously testified. The Court will analyze Nunn's tolling arguments through the lens of an April 30, 2012,[9] predicate-awareness date under § 2244(d)(1)(D). Nonetheless, absent some alternative tolling basis, Nunn's petition remains untimely. Using that date would extend the limitation period only to April 30, 2013, making the § 2254 filed in October 2013 tardy.

### 2.    Tolling

As the Court noted previously, the period between Nunn's October 22, 2013, 11.42 filing and state discretionary review denial on February 9, 2017, meets the statutory requirements for § 2244(d)(2) tolling. Yet, in the absence of some alternative tolling basis, Nunn's AEDPA clock already had expired before October 22, 2013. Thus, Nunn's state post-conviction filing would not aid him because, "once a deadline has expired, there is nothing left to toll." *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004); *see*

---

[8] As Judge Goodwine noted, Ross's Estate could not have bound other civil parties, such as the Opera House Square. *See Goodwine Opinion*, No. 09-CR-01678, at 10, 15. Scoville had communicated this to Nunn as well. *See* DE 1-2, at 77 ("[T]here is no way that Opera House Square will agree to dismiss against you and your assets."). Thus, Nunn surely should have known that a full dismissal was not even a possibility, given the list of players involved.

[9] Despite Scoville's April 26, 2012, mailing date, the Court cannot discern Nunn's receipt date with certainty. Accordingly, the Court grants Nunn the most favorable inference available from his "sometime in April" testimony. The state hearing unequivocally included this letter as part of the "telling" correspondence. *See Goodwine Opinion*, No. 09-CR-01678, at 8.

*Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001) ("[P]lain language of [§ 2244(d)(2)] indicates that an application for state post conviction . . . merely toll[s] the running of the statute of limitations.") (internal citations omitted). Nunn must justify some alternative means to bridge the gap between April 2012 and October 22, 2013, to benefit from possible tolling thereafter.

Given Nunn's reliance on efforts to obtain his case file to support tolling arguments, the Court provides a brief overview of those events, in advance of further analysis:

-- August 10 & 12, 2012—Per Nunn (though not included in exhibits), he mailed requests to trial counsel Scoville requesting case file. DE 18, at 31.

-- October 30, 2012—Nunn mailed notarized case file request to Scoville. DE 1-2, at 94–96.

-- November 1, 2012—Scoville responds: "I have had your entire file ready to be picked up by . . . whoever has your Power of Attorney." *Id.* at 97.

-- November 9, 2012—Notarized case file request mailed to civil trial court judge, Hon. James D. Ishmael, and criminal trial court judge, Hon. Pamela Goodwine. *Id.* at 98.[10]

-- February 1, 2013—Judge Goodwine conducted a hearing on the Commonwealth's motion to reinstate a protective order and remove from the

---

[10] The Court notes Nunn's claim that a January 2, 2013, letter from Judge Goodwine constituted a "promise" that he would receive his case file on February 1, 2013. DE 18, at 33 (discussing DE 1-2, at 109). The letter states that Nunn is entitled to his case file—which he eventually received—but Judge Goodwine offers no assurances regarding a timeline for Nunn's case-file receipt.

case file, before turnover, "photographs (of any origin) of [the victim] or any other women" and "a letter from Defendant to Diana Ross." *Id.* at 121.

-- February 22, 2013—Supplemental hearing following DPA request to stay reinstitution of the protective order on Nunn's behalf. *Id.* at 121–22. DPA offered Nunn's objection regarding inclusion of victim's autopsy photographs in the protective order. *Id.* The parties acknowledged Nunn's ability to review protected items "should any of the items become the subject of any post-conviction motions."[11] *Id.*

-- February 25, 2013—Judge Goodwine enters an order sustaining protective order reinstatement, on particular terms. *Id.*

-- March 28, 2013—Nunn moves for case-file release. *Id.* at 154.

-- April 23, 2013—Judge Goodwine orders case files released to Nunn upon his transportation to the Fayette County Courthouse on May 31, 2013. *Id.* at 155.

### A.    Additional Statutory Tolling - § 2244(d)(2)

Nunn relies on the pendency of the civil wrongful death action in his pursuit of additional statutory tolling under § 2244(d)(2). The statutory text forecloses Nunn's argument. Section 2244(d)(2) states: "The time during which a properly filed application for State post-conviction or other collateral **review with respect to the pertinent judgment or claim** is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). This provision is narrow. *See Lawrence*, 127 S. Ct. at 1081 (holding § 2244(d)(2) inapplicable to pendency of Supreme Court certiorari petition). Collateral review of a judgment or claim means "a judicial

---

[11] Nunn waived his appearance at the hearing. *Id.*

17

*reexamination* of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholi*, 131 S. Ct. 1278, 1285 (2011) (emphasis added).

A wrongful death action, brought by the personal representative of the deceased, does not involve reexamination of a judgment resulting from state criminal charges. *Compare* KRS 411.130 ("Action for wrongful death[.]"), *with* KRS 507.020 ("Murder."); *see also Woodward v. Cline*, 693 F.3d 1289, 1293 (10th Cir. 2012) (Post-conviction motion for DNA testing "did not call for a judicial reexamination of the judgment imposing Applicant's sentence."). The civil case in no way assessed or affected the criminal judgment, quite the opposite. In any event, the processes were independent. *See, e.g., Starns v. Andrews,* 524 F.3d 612, 620 (5th Cir. 2008) (in AEDPA context, calling a "wrongful death case" and a criminal proceeding "completely separate cases"); *Rufo v. Simpson,* 86 Cal. App. 4th 573, 626, 103 Cal. Rptr. 2d 492, 529 (2001) (affirming civil wrongful death judgment notwithstanding defendant's acquittal on homicide charges). Overlap between underlying facts does not remove the judgment or claim reexamination requirement under § 2244(d)(2). Here, the wrongful death suit does not meet that requirement, and, thus, civil suit pendency did not in any manner toll Nunn's AEDPA clock.

Nunn is entitled to an accrual date no later than April 30, 2012. Nunn is ineligible for statutory tolling before October 22, 2013. Accordingly, Nunn must establish his entitlement to equitable tolling for, at minimum, 177 of the 541 days between April 30, 2012, and October 22, 2013, to avoid expiration of the AEDPA clock before the 11.42 filing. Further, to ultimately survive a time bar, Nunn's equitable tolling arguments must also account for the 195 additional non-statutorily tolled days between February 9, 2017,

and his August 23, 2017, petition. However, as explained below, Nunn's bid for equitable tolling is also unsuccessful. Thus, Nunn's petition is time barred and the Court should dismiss it.

> ### B.    Equitable Tolling

The AEDPA statute of limitations is not jurisdictional; therefore, equitable tolling may be permissible in some circumstances. *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (citing *Day v. McDonough*, 126 S. Ct. 1675, 1681 (2006)); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit has succinctly stated the contours of the doctrine of equitable tolling:

> '[E]quitable tolling relief should only be granted sparingly.' *Souter v. Jones,* 395 F.3d 577, 588 (6th Cir. 2005) (quoting *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002)). 'The party seeking equitable tolling bears the burden of proving he is entitled to it.' *Robertson v. Simpson,* 624 F.3d 781, 784 (6th Cir. 2010). Ordinarily, a petitioner is entitled to equitable tolling only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.' *Holland v. Florida,* 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo,* 418, 125 S. Ct. 1807 (2005)); s*ee also Hall v. Warden,* 662 F.3d 745, 749–50 (6th Cir. 2011) (same).

*Freeman v. Trombley*, 483 F. App'x 51, 55 (6th Cir. 2012). The doctrine "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Plummer v. Warren*, 463 F. App'x 501, 504 (6th Cir. 2012) (citation and internal quotation marks omitted).

On this record and under the prevailing standards, the doctrine of equitable tolling does not apply to save Nunn's untimely petition. Nunn exhaustively argues his diligence. The Warden responds that Nunn showed diligence to his *state*, rather than *federal* rights, as would be required to equitably toll the AEDPA clock. DE 25, at 15. Nunn's latest

filing contends that diligent pursuits of state and federal rights are not mutually exclusive endeavors, and that he diligently pursued both. DE 28, at 5–7. The Court need not decide whether Nunn was sufficiently diligent under the equitable tolling standard because he fails to satisfy the additional and mandatory "extraordinary circumstance" prong of the *Holland* test.

Nunn claims that he repeatedly faced extraordinary circumstances throughout his case. DE 28, at 3–4. He contends he endured bad faith opposition and dishonesty from Scoville, the state prosecution, and the state courts. DE 18, at 13–18. Nunn also alleges Scoville had divided loyalties, was mentally impaired, and abandoned his client. *Id.* at 19–21. Yet, the Court sees no evidence that any circumstances—whether exceptional or banal—actually blocked Nunn's filing. Nunn, notwithstanding sparse conclusory and often fanciful allegations,[12] develops no cogent argument to the contrary.

Several of the impediments Nunn claims (divided loyalty, abandonment, counsel's alleged mental impairment) ended as factors when Scoville left the scene in April and May of 2012, some seventeen months before the 11.42 filing. *See Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010) (holding alleged negligence of petitioner's trial counsel had little to no bearing on his ability to file timely federal habeas petition). Others (*e.g.,* BOP case file seizure) arose after Nunn had already filed an analogous state post-conviction motion, belying any impediment assertion. On April 26, 2012, Scoville unequivocally informed Nunn that his representation was at an end. Even

---

[12] *See, e.g.*, DE 18, at 33 ("This Judge Goodwine 'promise' [that] Petitioner would obtain his attorney case file on February 1, 2013, which he did not gain possession of until May 31, 2013, was a huge impediment to the petitioner's timely filing."). Scoville's honesty is fairly in doubt. The Court rejects any assertion that the state court or prosecutor acted improperly.

if Scoville's pre-abandonment conduct could feasibly have hindered Nunn's filing until then, that obstacle left with Scoville.

Moreover, none of the alleged obstacles truly barred Nunn's § 2254 filing. For instance, Nunn relies heavily on impediments to case file access. Yet, he never identifies any particular inaccessible case file documentation relevant to his ineffective assistance claims, nor how access delay prevented his filing. The Court finds no case file relevance for (1) the alleged civil dismissal deal and its failure; (2) Scoville's alleged failure to demand a competency hearing or press EED (and the facts that he alleges necessitated such hearing); or (3) Scoville's acceptance of proceeds from Nunn's home's sale and the alleged pertinent conflict. Nunn obviously was—or could, through reasonable diligence, have been—aware of each of these events, regardless of case file access. In short, Nunn never explains how any of the alleged obstacles prevented timely filing his § 2254 exactly as it was eventually filed. *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) ("[Defendant] was quite aware of the limitations period and could have filed a pro se skeletal petition[.]"); *Stonebarger v. Williams*, 458 Fed. App'x 627 (9th Cir. 2011) (denying equitable tolling where prisoner could have filed timely federal habeas petition and requested stay), *cert. denied*, 132 S. Ct. 1870 (2012).

The Court finds no circumstance, and certainly nothing extraordinary, to keep Nunn from timely filing. He knew the bases for (or had access to the bases for) all claims by May of 2012. At that point, Scoville had told him the civil cases would not be dismissed. He knew the full strategic result of the guilty plea, and he was pro se and in charge of his own defense on the civil side. By July of 2012, Nunn told the state guardian ad litem that "Scoville either lied or mislead [sic] me as to the civil suit being dropped, as

per my plea. Obviously that hasn't happened. This & other issues may lead me to a 11.42." DE 1-2, at 88. Scoville repeatedly told Nunn his full file was available from May 2012 on, and by October 2012, the Fayette Circuit Court had entered a liability judgment in the wrongful death suit. Why Nunn failed to act in a timely manner is something only Nunn himself knows, but he was in control of the timing, and nothing extraordinary, or even ordinary, kept Nunn from complying with the AEDPA limitation.[13] As such, there is no equitable tolling basis, and the District Court should dismiss the petition.

### III.   Conclusion

Nunn presents no valid basis for an accrual date after April 30, 2012. Nunn also wholly failed to carry his tolling burden—whether equitable or statutory. Accordingly, the AEDPA 1-year statute of limitations expired no later than April 30, 2013, and Nunn's August 23, 2017, untimely petition is time-barred under § 2244(d).

---

[13] The Court notes, but does not fully address, several problems with the underlying theory. Nunn, in his state motion to plead guilty, denied he had received further leniency promises from anyone regarding the plea. *See* DE 1-2, at 68. It is difficult for the Court to believe that the lynchpin of Nunn's alleged plea motivation—ending the civil suits via Diana Ross's alleged agreement to drop the wrongful death action—would not rationally fall within this category. A promise to drop wrongful death proceedings surely equates to leniency. Further, the Estate was but one player, and the record shows no assent from the Executor. As Judge Goodwine noted, the Commonwealth was not part of any agreement on the civil side, *see Goodwine Opinion*, No. 09-CR-01678, at 4, and the Opera House Square, a distinct defendant with distinct interests, was another party in the mix, not accounted for in any alleged deal. *See_id.* at 10, 15. These are simply observations by the Court and do not impact the disposition, but the Court views Nunn's basic propositions as fanciful; this, perhaps, explains the fact that Nunn did not seek relief in the civil case or make his § 2254 claims in a timely fashion.

For the reasons stated, the Court **RECOMMENDS** that the District Judge **DISMISS** the time-barred petition (DE 1) **WITH PREJUDICE**[14] and **DENY** a certificate of appealability.[15]

\* \* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 17th day of January, 2018.



**Signed By:**

**_Robert E. Wier_**

**United States Magistrate Judge**

---

[14] Additionally, to ensure a clear and complete record, the Court **ORDERS** the Clerk to file the relevant Fayette Circuit Court Opinion & Order, supplied by Judge Wier's Chambers, in the record.

[15] No certificate of appealability should issue because the timeliness result is not, on this record, fairly debatable. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (requiring a petitioner to demonstrate, when a court dismisses on procedural grounds, that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"). For all of the reasons demonstrated in this ruling, the time bar is clear and demands petition dismissal.